

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-30-2004

# Szusterman v. Amoco Oil Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3360

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Szusterman v. Amoco Oil Co" (2004). *2004 Decisions.* Paper 303.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/303

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-3360

JERRY SZUSTERMAN;
10-12 SUSSEX AVENUE CORP.

Appellants

v.

AMOCO OIL COMPANY

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 00-cv-04744)
District Judge: Honorable Jose L. Linares

Submitted Under Third Circuit LAR 34.1(a)
September 14, 2004

Before: SCIRICA, Chief Judge, ALITO and AMBRO, Circuit Judges

(filed September 30, 2004)

OPINION

AMBRO, Circuit Judge

In 1995, Jerry Szusterman opened a gasoline station by entering into a franchise

agreement with Amoco Oil Company ("Amoco").[1] On November 27, 2000, Szusterman and 10-12 Sussex Avenue Corp. ("Sussex")[2] brought a suit against Amoco. Szusterman alleged, *inter alia*, breach of the implied covenant of good faith and fair dealing, claiming that his business had substantially declined because Amoco opened or allowed to be opened five Amoco-branded gasoline stations in close proximity to Szusterman's since its opening. Amoco responded that its agreement with Szusterman did not grant him any exclusive right to distribute Amoco gasoline in any particular geographic area.

On November 30, 2000, during the discovery period, the Magistrate Judge approved a pretrial scheduling order directing the parties to conclude all discovery by August 30, 2001. Because Szusterman indicated that he planned to furnish information about his damage claims based on experts' valuations, the parties were also ordered to provide information about any of their experts by June 30, 2001. The record shows that Szusterman failed to provide Amoco with the basis for his damage claims or experts' valuations of the alleged damages despite Amoco's repeated requests for this information. On August 22, 2001, the Magistrate Judge modified his pretrial schedule by extending the discovery deadline by four months until December 17, 2001 and directing Szusterman to serve any expert report by October 15, 2001. The Magistrate Judge warned that there

---

[1]Amoco is now known as BP Products America Inc.

[2]Co-plaintiff Sussex is the real property owner of Szusterman's gas station site. According to Amoco, it has no contractual relationship with Sussex. For convenience, we refer to Szusterman and Sussex jointly and severally only by the former's name.

would be no further extensions of these deadlines. Szusterman again did not provide information about an expert witness by the deadline. On February 5, 2002, in the final pretrial order, the Magistrate Judge stated that no expert would be permitted to testify at trial unless information about the expert and his report were provided. Szusterman failed to provide the relevant information.

On February 15, 2002, Szusterman requested additional time to locate an expert. On March 5, 2002, the Magistrate Judge denied that request. He explained that the denial was consistent with the earlier warning. The District Court upheld this decision on March 19, 2002. Upon Szusterman's motion for reconsideration, the District Court again affirmed its decision on April 26, 2002, stating that "there [was] no explanation for [Szusterman's] failure to timely request an extension to disclose an expert." It added that whether Szusterman "had already chosen a tentative expert and did not disclose him because he may not have been available . . . does not help [Szusterman]" and that "[Szusterman] should have disclosed [the expert] and later requested leave to change experts if he became unavailable." The District Court concluded that Szusterman "failed to show that the Magistrate Judge[]'s Order was clearly erroneous or contrary to the law." *See United States v. Raddatz*, 447 U.S. 667, 673 (1980) ("Review by the district court of the magistrate's determination of the[] nondispositive motions is on a 'clearly erroneous or contrary to law' standard."); *see generally* 28 U.S.C. § 636.

Thereafter, the record shows that Szusterman did not furnish any facts or

3

methodology based on which he calculated his alleged damages, despite the repeated requests to do so. Amoco thus moved to preclude Szusterman from offering evidence concerning damages and requested summary judgment. On July 8, 2003, the District Court granted Amoco's motion and entered summary judgment against Szusterman.

In ruling to preclude Szusterman from offering evidence of damages at trial, the District Court, among other things, pointed out that Szusterman failed to provide a computation of his alleged $10,000,000 damages required by Federal Rule of Civil Procedure 26(a)(1)(C).[3] The Court stated that Szusterman "ha[d] no substantial justification for failing to disclose the information that has been requested both by [Amoco] and required in the pretrial order and under the rules over the last almost three years . . . ." Moreover, as the District Court noted, although Szusterman demanded $10,000,000 in damages, when asked how he had calculated that figure in his deposition,

---

[3]The Rule provides in pertinent part:

> (a) Required Disclosures; Methods to Discover Additional Matter.
>> (1) Initial Disclosures. . . . *[A] party must*, without awaiting a discovery request, *provide to other parties*: . . .
>>> (C) *a computation of any category of damages* claimed by the disclosing *party, making available for inspection and copying* as under Rule 34 *the documents or other evidentiary material*, not privileged or protected from disclosure, *on which such computation is based*, including materials bearing on the nature and extent of injuries suffered; . . . .

Fed. R. Civ. Proc. 26(a)(1)(c) (emphasis added).

4

he answered, "I don't know."

Further concluding that the dismissal of the case was the only appropriate sanction, the District Court found that Szusterman's failure to provide required information was not only unjustified, but was prejudicial to Amoco. He explained: "There is no question that[,] without this information, [Amoco] would not be able to respond adequately to damages that are alleged by [Szusterman] and is left to wonder what . . . [Szusterman]'s damages and methodologies are . . . ." Plus, the Court found Szusterman's failure to abide by the Federal Rule was willful "because it was clear from the many requests that [he was] aware that this information was necessary, sought and ordered by the Court." Applying the *Poulis* factors,[4] the District Court ultimately concluded (on the morning of trial) that sanctions other than dismissal would be ineffective.

Szusterman moved for reconsideration. On August 26, 2003, the District Court denied that motion. Szusterman appeals. His claim is that the District Court abused its discretion when it (a) affirmed the Magistrate Judge's refusal to extend the deadline

---

[4]*See Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) ("In exercising our appellate function to determine whether the trial court has abused its discretion in dismissing, or refusing to lift a default, we will be guided by the manner in which the trial court balanced the following factors, which have been enumerated in the earlier cases, and whether the record supports its findings: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.").

further for disclosing Szusterman's experts, (b) excluded his evidence for damages at trial, and (c) ultimately dismissed his case. For the reasons given by the District Court, we agree with its decision to uphold the Magistrate Judge's ruling and to exclude Szusterman's evidence concerning damages at trial. Upon reviewing the record before us, we are convinced that the District Court thoroughly examined Szusterman's arguments, carefully weighed the *Poulis* factors, and reasonably concluded that the dismissal was warranted. Therefore, we affirm.